UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| IZAAK WALTON LEAGUE OF AMERICA, INC.; WILDERNESS WATCH; SIERRA CLUB NORTHSTAR CHAPTER; and NORTHEASTERN MINNESOTANS FOR WILDERNESS,<br><br>              Plaintiffs,<br><br>v.<br><br>ABIGAIL KIMBELL[1] and MIKE JOHANNS,<br><br>              Defendants,<br><br>and<br><br>COOK COUNTY, CONSERVATIONISTS WITH COMMON SENSE, and ARROWHEAD COALITION FOR MULTIPLE USE,<br><br>              Intervenors. | Civil No. 06-3357 (JRT/RLE)<br><br>**MEMORANDUM OPINION** |

Kristen M. Gast, Brian B. O'Neill, Richard A. Duncan, and Jonathan W. Dettmann, **FAEGRE & BENSON LLP**, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-3901, for plaintiffs.

Patricia R. Cangemi, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendants.

David R. Oberstar, **FRYBERGER, BUCHANAN, SMITH & FREDERICK, PA**, 700 Lonsdale Building, 302 West Superior Street, Duluth, MN 55802, for intervenors.

---

[1] On January 12, 2007, Abigail Kimbell was appointed to serve as chief of the United States Forest Service. Kimbell is substituted for former Forest Service chief Dale Bosworth pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

---

Plaintiffs are a coalition of environmental and conservation groups who challenge a decision of the United States Forest Service ("Forest Service" or "USFS") to construct a snowmobile trail connecting McFarland Lake to South Fowl Lake along a route that is adjacent to the Boundary Waters Canoe Area Wilderness ("BWCAW") in northeastern Minnesota. Plaintiffs further challenge the Forest Service's failure to set motorboat quotas for South and North Fowl Lakes, and argue that the Forest Service's actions violate the Wilderness Act, the BWCAW Act, the National Forest Management Act, the National Environmental Policy Act, and the Administrative Procedure Act. Plaintiffs, defendants, and intervenors filed cross-motions for summary judgment.

Resolution of plaintiffs' claims turns in part on whether the Fowl Lakes were designated as wilderness under the BWCAW Act. Because the parties dispute the proper boundaries of the BWCAW, the Court issues this Memorandum Opinion to resolve the predicate question as to the location of the boundaries of the wilderness area as set forth in the BWCAW Act.[2] For the reasons set forth below, the Court finds that the Fowl Lakes are not located within the wilderness area that is prescribed under the BWCAW Act.

**BACKGROUND**

South and North Fowl Lakes are the eastern-most lakes in a chain of lakes along the border between northeast Minnesota and Canada. In 2003, the Forest Service

---

[2] The Court will rule on the parties' cross-motions for summary judgment in a separate order to be issued following this memorandum opinion.

identified an unlawful snowmobile route, known locally as the Tilbury Trail, located in the Superior National Forest, which connected McFarland Lake in the west to South Fowl Lake in the east.  The Forest Service closed the Tilbury Trail because it encroached on Royal Lake and Royal River, located within the BWCAW along the northern edge of the Tilbury Trail.  Following closure of the Tilbury Trail, the only available snowmobile access route to South Fowl Lake was Cook County Road 16, which required snowmobiles to share a steep and potentially dangerous road with cars and trucks.  Because the Forest Service wished to develop a safe alternative route that would provide public snowmobile access to the South Fowl Lake, the Forest Service proposed construction of the South Fowl Snowmobile Trail (the "South Fowl Trail"), connecting McFarland Lake to South Fowl Lake along the same general route as the Tilbury Trail.

In the summer of 2003, the Forest Service began public discussions and field research on the proposed trail, culminating in a draft proposal for the South Fowl Trail that identified several alternative snowmobile routes.  In November 2005, the Forest Service released an environmental assessment ("EA") for the proposed South Fowl Trail. The EA identified four potential trail routes[3] between McFarland Lake and South Fowl Lake, three of which involved trails along existing roadways not closer than one-half mile from the BWCAW boundary at Royal Lake.  The "Alternative 2" trail route was the northern-most route of the proposed trails, and would involve the construction of 2.2 miles of new snowmobile trail.  A segment of the trail would ascend to a bench along a

---

[3] The EA also identified a "no-action" alternative.

steep ridge that is immediately adjacent to the BWCAW, and that overlooks both Royal River and Royal Lake.

On February 21, 2006, the Forest Service issued a Decision Notice and Finding of No Significant Impact ("DN/FONSI") approving selection of the Alternative 2 route for the South Fowl Trail. The DN/FONSI concluded that construction of the South Fowl Trail along the Alternative 2 route was not a "major Federal action[] significantly affecting the quality of the human environment" under the National Environmental Policy Act ("NEPA"). 42 U.S.C. § 4332(2)(C). Although the DN/FONSI found that the South Fowl Trail would cause snowmobiles to be both visible and audible from inside the adjacent wilderness area, the Forest Service determined that a more complete analysis of the effects in an Environmental Impact Statement ("EIS") was unnecessary.

Various environmental groups appealed the DN/FONSI. On May 18, 2006, a Forest Service Appeal Reviewing Officer recommended that the selection of Alternative 2 as set forth in the DN/FONSI be affirmed, and the Forest Supervisor subsequently adopted the recommendation.

Plaintiffs filed this lawsuit on August 17, 2006.[4] Plaintiffs argue that the Forest Service's decision to construct a new snowmobile trail along the Alternative 2 route violates the BWCAW Act, the Wilderness Act, and the National Forest Management Act. Plaintiffs further argue that the Forest Service's determination that an EIS is not necessary for the proposed action violates NEPA and the Administrative Procedure Act

---

[4] Plaintiffs originally filed a motion for a temporary restraining order against defendants. On August 30, 2006, the Forest Service agreed to halt construction of the snowmobile trail pending resolution of this action.

("APA"). In addition, plaintiffs contend that the Forest Service has failed to develop and implement entry point quotas for the use of motorboats on North and South Fowl Lakes, as required under the BWCAW Act. Plaintiffs, defendants, and intervenors filed cross-motions for summary judgment.

Resolution of the summary judgment motions turns in part on whether the Fowl Lakes were designated as wilderness area under the BWCAW Act. Plaintiffs argue that the text and legislative history of the BWCAW Act show that the Fowl Lakes are included within the wilderness area. Defendants and intervenors respond that the BWCAW Act, as well as the legal description and map published by the Forest Service pursuant to the Act, exclude South and North Fowl Lakes from the wilderness area. To answer this question, the Court must decide two distinct issues that warrant separate consideration by the Court in this Memorandum Opinion. First, the Court must decide whether the legal description and map published by the Forest Service are properly based on the Congressional map specified in § 3 of the BWCAW Act. Second, the Court must determine whether the Forest Service legal description and map show the Fowl Lakes to be included in, or excluded from, the BWCAW. In order to resolve any remaining uncertainty over the proper BWCAW boundaries and the status of the Fowl Lakes, the Court addresses each issue in turn.

## ANALYSIS

### I.   THE BWCAW ACT

The interpretation of a statute begins with the plain meaning of its words. *United States v. Smith*, 171 F.3d 617, 620 (8th Cir. 1999).  The Court looks to legislative history and other sources to determine Congress's intent only where the statute is ambiguous. *Id.* Section 3 of the BWCAW Act, entitled "Boundary Waters Canoe Area Wilderness Designation and Map," provides in relevant part as follows:

> The areas generally depicted as wilderness on the map entitled "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area" dated September 1978, comprising approximately one million and seventy-five thousand five hundred acres, are hereby designated as the Boundary Waters Canoe Area Wilderness. . . . The Secretary shall … publish a detailed legal description and map showing the boundaries of the wilderness in the Federal Register. . . . Such map and description shall have the same force and effect as if included in this Act.

Pub. L. No. 95-495, § 3.  Thus, § 3 directs the Forest Service to publish a legal description and map of the BWCAW based on the "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area" map.  In April 1980, the Forest Service published in the Federal Register a legal description and series of 21 detailed maps (the "Forest Service map") showing the boundaries of the BWCAW.  (Administrative Record ("Admin. Rec.") at 3628-3702.)  Defendants argue that the BWCAW boundary, as drawn by the Forest Service in the published legal description and map, excludes North and South Fowl Lakes from the wilderness area.

Plaintiffs point to the statutory language in § 4(c) to argue that the Fowl Lakes must be included in the BWCAW.  Section 4(c) of the BWCAW Act, entitled "Administration," provides that

>the use of motorboats is prohibited within the wilderness designated by this Act, and that portion within the wilderness of all lakes which are partly within the wilderness, except for the following:
>
>. . . .
>
>(2) On the following lakes and river, motorboats with motors no greater than ten horsepower shall be permitted: Clearwater, Cook County; *North Fowl, Cook County*; *South Fowl, Cook County*; Island river east of Lake Isabella, Lake County; Sea Gull, that portion generally east of Threemile Island, Cook County; Alder, Cook County; Canoe, Cook County.

Pub. L. No. 95-495, § 4(c) (emphasis added). Plaintiffs argue that the inclusion of the Fowl Lakes in the list of lakes exempted from the BWCAW motorboat ban indicates that the Fowl Lakes are located wholly or partly within the wilderness area. Plaintiffs point out that all of the other listed lakes are located wholly or partly within the BWCAW. Thus, according to plaintiffs, to the extent that the Forest Service map may be read to exclude the Fowl Lakes from the BWCAW, that map conflicts with, and must cede to, the plain text of § 4(c).

The Court finds that the plain language of § 3 unequivocally designates the BWCAW boundaries by use of the map entitled "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area" and dated September 1978. *Nat'l Ass'n of Prop. Owners v. United States*, 499 F. Supp. 1223, 1232 (D. Minn. 1980) (stating that "in [§ 3] of the new Act, Congress itself designated the boundaries by use of the map of September, 1978"). Section 4 does not by its terms purport to *designate* BWCAW boundaries, but rather provides that the Secretary "shall administer the wilderness" as further described in that section. Pub. L. No. 95-495,

§ 4(a).[5] Thus, the inclusion of the Fowl Lakes in § 4(c) does not establish that the Fowl Lakes are located wholly or partly within the BWCAW. Rather, consistent with the text of the BWCAW Act, the Court must look to § 3 to determine the BWCAW boundaries, which in turn directs the Court to the "detailed legal description and map" published by the Forest Service. Pub. L. No. 95-495, § 3.

Plaintiffs next argue that even if § 3 is the operative section for boundary designation, it is unclear which map constitutes the final iteration of the "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area" map, as designated by Congress in § 3 of the BWCAW Act.[6] Defendants point to a large format map introduced at oral argument, entitled "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area" and dated September 1978, arguing that it matches the description in § 3 and is therefore the map designated by Congress and relied on by the Forest Service. Plaintiffs contend that the attachment of a different map to the Senate Report on the BWCAW Act demonstrates that it, and not the large format map, was the last map considered by Congress prior to passage of the BWCAW Act. *See* Subcomm. on Nat'l Parks and Insular Affairs, 95th Cong., *Legislative History of the Boundary Waters Canoe Area Wilderness (Public Law*

---

[5] While plaintiffs correctly point out that section titles generally do not limit the plain meaning of the statutory text, *see Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998), the Court notes that the text of § 4 itself addresses BWCAW administration, and not designation.

[6] Plaintiffs originally contended that the map entitled "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area," had been lost. However, at oral argument defendants produced a large format map entitled "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area," and dated September 1978. The large format map appears to exclude the Fowl Lakes from the BWCAW.

*95-495)* (Comm. Print Dec. 1978) 255.  According to plaintiffs, the map that appears in the Senate Report shows the Fowl Lakes to be included in the BWCAW.  Thus, plaintiffs argue that by excluding the Fowl Lakes from the BWCAW on the Forest Service map, the Forest Service either relied on the wrong congressional map, or usurped its authority by deviating from the wilderness boundaries that appear in the map attached to the Senate Report.

The Court finds no uncertainty as to the congressional map designated in § 3.  The large format map introduced at oral argument, unlike the Senate Report map cited by plaintiffs, is entitled "Boundary Waters Canoe Area Wilderness and Boundary Waters Canoe Area Mining Protection Area," and dated September 1978.  Thus, the large format map matches precisely the statutory description contained in § 3, and the Court is not persuaded that the appearance of a different map in the legislative history undermines the plain language of § 3.  Further, defendants provided evidence from a Forest Service employee that the large format map "is the one presented to the Forest Service following the BWCAW legislation," and relied upon by the Forest Service in preparing the subsequent legal description and map.  (Decl. of Barbara A. Soderberg.)  Indeed, this Court has previously rejected a claim that the Forest Service map and legal description are incorrect.  *See Nat'l Ass'n of Prop. Owners*, 499 F. Supp. at 1232, 1238-39.  In *National Association of Property Owners*, the Court addressed, *inter alia*, a challenge to

the designation and location of various motorized routes within the BWCAW.[7]  *Id.* at 1232.  The Court found that Congress and the Forest Service had complied with the boundary designation procedure as set forth in § 3, and rejected an argument that the USFS was "attempting to publish an incorrect detailed map in the Federal Register."  *Id.*

This Court further notes that the BWCAW boundaries have gone largely unchallenged for nearly 30 years.  Had the Forest Service based its legal description and map on an incorrect version of the § 3 source map, such a mistake is unlikely to have gone unnoticed and litigation over BWCAW boundaries would have commenced long ago.  To decide otherwise would not only disregard the plain language of the statute, but it would also disturb a generation of settled expectations as to the proper boundaries of the BWCAW.  For these reasons, and to resolve any remaining uncertainty as to the actual wilderness area, the Court holds that the BWCAW boundaries are properly set forth in the legal description and 21 maps published by the Forest Service pursuant to § 3 of the BWCAW Act.

## II.    LOCATION OF SOUTH AND NORTH FOWL LAKES

Having determined that § 3 and the Forest Service map establish the proper BWCAW boundaries, the Court turns to the Forest Service map to determine whether the Fowl Lakes are included in, or excluded from, the BWCAW.  Plaintiffs argue that even if the Forest Service map establishes the proper BWCAW boundaries, that map nonetheless

---

[7] The Court did not address specific allegations concerning boundary errors, however.  *Id.* at 1232.

includes the Fowl Lakes. In particular, plaintiffs point to the legend of the Forest Service map, which labels the Fowl Lakes as subject to "BWCAW motor restrictions," to argue that the Fowl Lakes must be included in the BWCAW. (Admin. Rec. at 3691.) However, the Court finds that the boundary lines drawn on the Forest Service map are located to the west of South Fowl Lake and along the western edge of North Fowl Lake, thus excluding the Fowl Lakes from the BWCAW. (*See* Admin. Rec. at 3691; Gov't Ex. A.) The Court is not persuaded that the Forest Service map legend demonstrates that the Fowl Lakes are themselves included in the BWCAW. The Court finds that the language of the map legend merely reflects the fact that the motor restrictions were created and imposed by the BWCAW Act. In short, the plain language of § 3 and the accompanying Forest Service map show that the Fowl Lakes are excluded from the BWCAW.

Given the lack of statutory ambiguity, the Court finds that recourse to legislative history to determine the status of the Fowl Lakes is neither necessary nor particularly illuminating.[8] Nonetheless, the Court finds significant a clarifying statement made in April 1979 by Representative Phillip Burton, chairman of the Subcommittee on National Parks and Insular Affairs and a co-sponsor of the BWCAW legislation, in a letter to then Chief of the Forest Service Dr. John McGuire. Addressing the "apparent inconsistency" in including the Fowl Lakes in § 4(c), Representative Burton wrote that "the wilderness boundary, as finally drawn, follows the west shore of [the Fowl Lakes], excluding their

---

[8] This is especially true in the context of the BWCAW Act, whose history reflects a long series of complex political and legislative compromises. *See generally* Subcomm. on Nat'l Parks and Insular Affairs, 95th Cong., *Legislative History of the Boundary Waters Canoe Area Wilderness (Public Law 95-495)* (Comm. Print Dec. 1978).

waters from the designated wilderness," but that "[t]he Committee on Interior and Insular Affairs, which determined the wilderness boundary, did and does intend to limit motor sizes on North and South Fowl Lakes." (Admin. Rec. at 3626A-B.)  While the Court is generally reluctant to attach any significance to subsequent legislative history, the Burton letter confirms the Court's statutory interpretation of the BWCAW Act and the Forest Service map. *See Washington County v. Gunther*, 452 U.S. 161, 194 n.6 (1981) (noting the danger of relying on subsequent legislative history, but stating "that does not mean that such legislative history is wholly irrelevant, particularly where, as here, the sponsor of the legislation makes a clarifying statement which is not inconsistent with the prior ambiguous legislative history").

In sum, the Court holds that the BWCAW Act and the Forest Service map exclude North Fowl Lake and South Fowl Lake from the BWCAW.

### III. CONCLUSION

The Court concludes that the legal description and 21 maps published by the Forest Service pursuant to § 3 of the BWCAW Act depict the definitive boundaries of the BWCAW. The Court further finds that the Forest Service map, consistent with the text and structure of the BWCAW Act, shows that the Fowl Lakes are excluded from the BWCAW.

DATED:  August 31, 2007                                   s/ John R. Tunheim       _
at Minneapolis, Minnesota.                                      JOHN R. TUNHEIM
                                                             United States District Judge